IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**United States of America,**

      **Plaintiff,**

v.                                               Case No. 07-20050-JWL

**Brian D. Harris,**

      **Defendant.**

## MEMORANDUM & ORDER

In June 2008, Brian Harris entered a plea of guilty to one count of distributing child pornography in violation of 21 U.S.C. § 2252(a)(1). The district judge assigned to this case at the time sentenced Mr. Harris to a 151-month term of imprisonment (the low end of the applicable range) followed by a 10-year term of supervised release. Mr. Harris's supervision began on May 17, 2019, and he has now completed more than five years of supervision largely without incident.

This matter is now before the court on Mr. Harris's motion for early termination of his supervision (doc. 42). Mr. Harris contends that early termination is appropriate because his reintegration into society is complete and further supervision is unnecessary. The government and probation oppose the motion primarily because Mr. Harris is a sex offender. The court held a hearing on the motion on December 9, 2024, where Mr. Harris was represented by counsel and had an opportunity to testify. After carefully considering the evidence and arguments presented at the hearing, as well as the written submissions of the parties, the court grants the motion.

*Applicable Standard*

Mr. Harris seeks early termination of his 10-year term of supervised release under 18 U.S.C. § 3583(e)(1), which authorizes the court to terminate a defendant's term of supervised release "at any time after the expiration of one year of supervised release" if the court "is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *See United States v. Begay*, 631 F.3d 1168, 1171–72 (10th Cir. 2011).  In deciding whether to terminate supervised release early, § 3583(e) directs the court to consider certain factors set forth in 18 U.S.C. § 3553(a).  Whether to grant a motion for early termination rests within the discretion of the court. *Rhodes v. Judisak*, 676 F.3d 931, 933 (10th Cir. 2012). In deciding whether to grant early termination, the court must make an individualized determination of whether termination is appropriate based on the applicable statutory criteria and may not simply rely on a "blanket policy" against early termination.  *See United States v. Hartley*, 34 F.4th 919, 928-29 (10th Cir. 2022).

The Judicial Conference recommends that courts consider two sets of factors under 18 U.S.C. § 3553(e), depending on whether the defendant has been on supervised release for 18 months. *See* Judicial Conference of the United States, *Guide to Judiciary Policy*, vol. 8, § 360.20(b)–(c) (July 2, 2018).  For defendants like Mr. Harris requesting early termination after serving 18 months or more of supervision, a presumption in favor of early termination of supervised release applies if they meet the following criteria:

(1) The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. § 994(h)) or has not committed a sex offense or engaged in terrorism;

(2) The person presents no identified risk of harm to the public or victim;

2

(3) The person is free from any court-reported violations over a 12-month period;

(4) The person demonstrates the ability to lawfully self-manage beyond the period of supervision;

(5) The person is in substantial compliance with all conditions of supervision; and

(6) The person engaged in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

*United States v. Christian*, No. 13-40020-JAR, 2024 WL 2260899, at *3 (D. Kan. May 15, 2024). As described below, Mr. Harris meets the second through sixth criteria of this provision. But he concedes that his offense of conviction disqualifies him from a presumption in favor of early termination under the Judicial Conference's guidance. Therefore, the court considers the factors under § 3553(a), and whether early termination is in the interest of justice.

*Section 3553(a) Factors*

While the court has the authority to terminate supervised release after one year, it must consider certain factors set forth in § 3553(a) before ending supervision: (1) the nature and circumstances of the offense and the defendant's personal history and characteristics; (2) adequate deterrence; (3) protection of the public; (4) the need for effective education, training, care or treatment; (5) the sentencing guideline factors and range in effect at the time of sentencing; (6) pertinent Sentencing Commission policy statements; (7) the need to avoid unwarranted sentencing disparities between similarly-situated defendants; and (8) the need to provide victim restitution. *See* 18 U.S.C. § 3583(e) (citing 18 U.S.C. § 3553(a) factors).

3

The court finds that the relevant § 3553(a) factors weigh in favor of terminating Mr. Harris's supervised release.[1] The court certainly gives weight to the nature and circumstances of the offense of conviction—distribution of child pornography. This is a serious crime that exploits the most vulnerable. The court is also mindful that the materials Mr. Harris obtained and viewed in this non-production case included sadistic and violent content and involved very young children. But Mr. Harris's personal history and characteristics weigh in favor of early termination. To begin, Mr. Harris pled guilty, accepted responsibility for his conduct (the government recommended the additional one-point reduction) and voluntarily surrendered to custody after his sentencing. He made no objections to the presentence investigation report. He had no criminal history points.

Moreover, the government concedes that Mr. Harris, since his release, has strengthened his family relationships, maintained stable employment, and participated in programming authorized by probation. Specifically, the record reflects that Mr. Harris has worked hard to re-establish relationships with his children and that his ex-wife remains supportive of his relationship with their children. His two sons and his ex-wife have submitted letters in support of Mr. Harris's motion. Those letters reflect a strong, stable home life and significant social support. The record also reflects that Mr. Harris has maintained full-time employment since his release with the same tile-installation company that employed him for years prior to his incarceration. In fact, the owner of the company indicated at the time of sentencing that Mr. Harris would be eligible for rehire upon his release and has submitted a letter to the court stating

---

[1] The parties do not discuss the need to avoid unwarranted sentencing disparities between similarly-situated defendants or the need to provide victim restitution and the court agrees that these factors are not applicable here.

4

that Mr. Harris has been an "exceptional" employee and an "indispensable asset" to the company since his rehire. In his own testimony, Mr. Harris appeared passionate about his work and grateful to be performing meaningful work every day. He now works with one of his sons in the tile-setting trade. Mr. Harris has also completed sex offender treatment and has maintained substantial compliance with his conditions of supervision.[2] In the court's view, these facts do not demonstrate mere compliance with the conditions of supervised release, they demonstrate affirmative steps and meaningful efforts to reintegration.

The court also finds that early termination of supervised release achieves adequate deterrence. As Mr. Harris persuasively argues, specific deterrence has been served by his 11-year prison term. And the court is persuaded that Mr. Harris's employment situation and social and familial progress since he was released from BOP custody incentivize him to avoid future offending conduct. On the stand, Mr. Harris spoke candidly about his prior mistakes and showed a deep understanding of what is at stake if he were to reoffend. Mr. Harris's conduct while on supervision, coupled with the significant support he has from his family and his employment situation, convinces the court that defendant does not present an identifiable risk to the public or victims and that he can successfully manage his conduct going forward.

There is no evidence in the record that Mr. Harris requires or would benefit from additional treatment—in fact, he was released early from sex offender treatment. Moreover, Mr.

---

[2] The record reflects that Mr. Harris tested positive for THC on two occasions. The only court-reported positive test occurred more than 3 years ago, and the second positive test was over one year ago.

5

Harris's counsel stated during the hearing that Mr. Harris had passed multiple polygraph tests about whether he had engaged in any prohibited or unlawful conduct during his supervision.[3]

With respect to the sentencing range in effect at the time of sentencing and pertinent Sentencing Commission policy statements, the government urges that the available range of supervised release was 5 years to life and that the U.S.S.G. § 5D1.2(c) policy recommendation to implement the maximum term of supervised release was in effect. The government seems to suggest that because Mr. Harris could have or should have received a lifetime supervision term, he should not be complaining about a 10-year term and should be required to finish the entire term. In fact, the government states elsewhere that only the full supervision term will foster deterrence and protect the public. But, of course, the same could be said for any defendant who receives less than the maximum term of supervision and the very nature of this argument is inconsistent with the Circuit's admonition that a district court engage in an individualized assessment of whether early termination is appropriate.

When pressed at the hearing to identify something specific about Mr. Harris or his conduct that warranted continued supervision, counsel for the government identified the difficulty in detecting child pornography crimes generally; the risk of recidivism for sex offenders; and the fact that there was a 13-year gap between Mr. Harris's state-law battery conviction and the underlying offense which, according to the government, suggests that years might pass before Mr. Harris reoffends. These arguments are not persuasive to the court. With respect to the idea that sex offenses are difficult to detect and can occur for long periods of time

---

[3] While this statement is not evidence, the government did not object to the statement or seek to correct it.

without detection, there is nothing about Mr. Harris specifically that suggests he is engaging in unlawful or unauthorized conduct. As noted, he has passed multiple polygraph tests. The only electronic device he utilizes is a phone that is monitored constantly. Probation has never uncovered any other device in Mr. Harris's home or possession and has no knowledge that he has used any other device at any time. Without any evidence concerning Mr. Harris's conduct, the government's argument that these types of crimes are not readily detected is akin to a blanket policy in favor of denying early release for all sex offenders.

The parties also dispute the level of Mr. Harris's risk for recidivism. Mr. Harris suggests that various studies reflect a recidivism rate for non-production sex offenders at less than 5 percent. The government insists that the reports cited by Mr. Harris utilize only three-year follow-up periods and that more recent data reflects higher rates of recidivism over longer time periods. The government, then, seems to espouse a lifetime supervision policy for all sex offenders "because such criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison." Doc. 44 at 10 (citing *United States v. Young*, 502 Fed. Appx. 726, 729 (10th Cir. 2012)).[4] Again, the notion of lifetime supervision for all sex offenders is completely at odds with the required individualized assessment afforded to those seeking early termination of supervision.

The court is similarly unmoved by the argument that the 13-year gap between Mr. Harris's battery conviction and his conviction for the underlying offense suggests that continued supervision is necessary. The battery conviction stemmed from a domestic dispute with his first

---

[4] Notably, *Young* is not an early-termination case. In that case, the defendant unsuccessfully challenged as substantively unreasonable an in-guidelines sentence of lifetime supervision. 502 Fed. Appx. at 727.

7

wife. Nothing about the description of that incident in the PSR bears any resemblance to the underlying offense. And, of course, if the government's argument is credited, the natural conclusion must be that there is nothing Mr. Harris can do or accomplish to warrant early termination. This is simply not the law.

Lastly, the government directs the court to *United States v. Doerr*, 2021 WL 663192, 14-cr-50004-JAR, at *1 (D. Kan. Feb. 19, 2021) in support of its objection to Mr. Harris's motion. But the facts of *Doerr* are different from those presented here in significant ways. In that case, the defendant pled guilty to traveling to engage in sexual contact with a minor and was sentenced to 60 months imprisonment and 10 years of supervised release. *Id*. The defendant moved for early termination of supervision after 7 years. *Id*. The court denied the motion, finding that continued supervision was necessary to assist the defendant with rehabilitation and reintegration. *Id*. During his supervision, the defendant possessed an unauthorized electronic device containing pornographic material and had unsupervised contact with his girlfriend's minor child without approval from the Probation Officer. *Id*. at *2. Because of that unauthorized and unsupervised contact with a minor, he had to return to sex offender treatment. *Id*. at *2. The defendant in *Doerr*, then, had noncompliance issues that directly related to his underlying offense. No such issues exist here, and the court is not persuaded that *Doerr* is sufficiently similar to this case to be helpful to the court's analysis.

*Interest of Justice*

Having considered the § 3553(a) factors, the court is satisfied that early termination of supervision in this case is in the interest of justice. Mr. Harris has shown significant growth and

progress during the years he has been on supervised release. This conduct, as detailed above, demonstrates that his reintegration back into society is complete and that the continued support of the probation office is not necessary.  The court is also persuaded that supervision is now in fact limiting Mr. Harris's progress in terms of professional growth and that, without the restrictions of supervision, he will be able to contribute more fully in various projects and can pursue additional opportunities within the company. In short, the evidence here reflects that the purpose of supervised release has been achieved; Mr. Harris has successfully reintegrated into the community. *See United States v. Booker*, 63 F.4th 1254, 1261 (10th Cir. 2023) (citing U.S.S.G. Ch. 7, Pt. A(4) (2021)).  Mr. Harris's motion, then, is granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Harris's motion for early termination of supervised release (doc. 42) is **granted** and the term of supervised release is hereby terminated.

**IT IS SO ORDERED.**

Dated this 13th day of December, 2024, at Kansas City, Kansas.

s/John W. Lungstrum
John W. Lungstrum
United States District Judge